NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLEN PHELPS, | Civil Action No. 12-5223 (DMC) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| PRESSLER & PRESSLER, LLP, | |
| Defendant. | |

**CLARK, Magistrate Judge**

This matter having been opened to the Court upon Plaintiff Allen Phelps' ("Plaintiff") motion for leave to file an amended complaint pursuant to FED.R.CIV.P. 15(a)(1)(B) (the "Motion to Amend") to add three defendants: 1) Encore Capital Group Inc. ("Encore"); 2) Midland Funding, LLC, ("Midland Funding"); and 3) Midland Credit Management, Inc. ("Midland Credit") to this action. [Docket Entry No. 11]. Defendant Pressler & Pressler, LLP ("Defendant") opposes Plaintiff's motion. [Docket Entry No. 15, 18]. The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Plaintiff's motion. The Court considers Plaintiff's motion without oral argument pursuant to L.CIV.R. 78.1(b). For the reasons set forth more fully below. Plaintiff's Motion to Amend is GRANTED IN PART and DENIED IN PART.

I. **BACKGROUND**

Defendant is a New Jersey entity engaged in the business of collecting debts. *Compl*. ¶4. An alleged debt of the Plaintiff (the "alleged debt") was, either directly or through intermediate transactions, assigned, placed, transferred, or sold to Defendant. *Id.* at ¶10. The alleged debt was

1

owing on Beneficial Account 9517060057XXXX (the "Beneficial Account"). *Id.* at ¶34. At some time during the year prior to the filing of this action, Defendant began its to attempt collection of the alleged debt from Plaintiff. *Id.* at ¶12. Specifically, on April 12, 2012, Defendant caused a collection or "dunning" letter (the "First Collection Letter") to be sent to Plaintiff. *Id.* at ¶14. The First Collection Letter states in relevant part, "We shall afford you this opportunity to pay this debt immediately and avoid further action against you… At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due." *Id.* at Exhibit A.

On or about May 21, 2012, Midland Funding filed a lawsuit against Plaintiff in the Superior Court of New Jersey, Special Civil Part, Hunterdon County (the "State Court Action"). *Defendant's Brief in Opposition* at 2; Docket Entry No. 12-1. Subsequently, Defendant also sent a second collection or "dunning" letter to Plaintiff (the "Second Collection Letter"), demanding payment of the alleged debt. *Compl.* ¶¶23-24. The Second Collection Letter states in relevant part, "As you probably know, this office has filed a law suit against you in which the amount claimed is $4,862.55. This includes costs and other amounts the creditor is seeking." *Id.* at ¶25. On September 4, 2012, Plaintiff signed a settlement agreement (the "Settlement Agreement") in the State Court Action. *Def. Br. Opp.* at 2. The Settlement Agreement purported that Plaintiff and Midland Funding have settled the State Court Action for the amount of $1,200.00. *Id*. Plaintiff complied with these terms whereas he paid Defendant $1,200.00. *Id*. at 4.

Plaintiff filed a complaint (the "Complaint") in this Court on August 16, 2012, alleging a violation of the Fair Debt Collection Practices Act ("FDCPA")[1], 15 U.S.C. §1692, *et seq*. *See*

---
[1] Plaintiff's Complaint alleges violations of the following FDCPA provisions: 1) 15 U.S.C. § 1692d-preface; 2) 15 U.S.C. §1692e-preface, (2), (5), and (10); 3) 15 U.S.C. §1692f-preface, and (1); and 4) 15 U.S.C. §1692g.

*generally Compl*. Defendant responded to the Complaint with separate defenses on November 19, 2012. [Docket Entry No. 7]. This Court then set a schedule for discovery by Order dated February 1, 2013 (the "Scheduling Order'), and ordered that any motion to add new parties, whether by amended or third-party complaint, was to be filed not later than April 15, 2013. [Docket Entry No. 10].

On April 15, 2013 Plaintiff timely filed the instant motion, seeking leave to file an amended complaint (the "Proposed Amended Complaint") to name Encore, Midland Funding, and Midland Credit, as additional defendants to this action. *See generally Am. Compl*.[2] Plaintiff argues that an amended complaint is necessary to assert claims against additional entities with direct involvement in the collection of debts. *Am. Compl*. ¶¶5-8. Specifically, Plaintiff asserts that Defendant, along with Encore, Midland Funding, and Midland Credit, acted jointly and in concert to collect consumer debts incurred primarily for personal, family, or household purposes, such as the alleged debt. *Am. Compl*. ¶10.

Midland Credit and Midland Funding are under common control and ownership by Encore. *Id.* at ¶8. Encore purchases portfolios of defaulted consumer debt and manages their collection through its subsidiary entities. *Am. Compl*. ¶15. Defendant is a law firm that has represented and continues to represent Midland Funding and Midland Credit. *Id.* ¶33. Plaintiff's proposed Amended Complaint alleges that Midland Funding and/or Midland Credit placed Plaintiff's account with Defendant pursuant to a collection agreement. *Id*. Plaintiff further alleges that Midland Funding then, either directly or through intermediate transactions assigned, placed, transferred, or sold the alleged debt to Defendant, Pressler and Pressler, LLP, for collection. *Id*. at ¶¶35-36.

---

[2] The Proposed Amended Complaint also, in addition to the violations of the FDCPA provisions referenced *supra*, alleges violations of 15 U.S.C. §1692e(8) and 15 U.S.C. §1692g(a) and (b).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it; or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, pursuant to Rule 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To evaluate futility the District Court uses "the same standard of legal sufficiency" as applied for a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2).[3] Citing its opinion in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), for the proposition that "'[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice .... Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"-- "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

*Iqbal,* 129 S. Ct. at 1949-1950 (citations omitted). The Court further explained that:

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

*Id.* at 1950.

Thus, to prevent a summary dismissal, a civil complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Id.* at 1949. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The

---

[3] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." FED.R.CIV.P. 8(d).

Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. *Id.* at 1949-50.

### III. DISCUSSION

#### A. Midland Funding

As its primary argument, Defendant contends that Plaintiff's Motion to Amend against Midland Funding should be denied as futile on the grounds that Plaintiff "signed a settlement agreement which contained a release of claims". *Def. Br. Opp.* at 4. Specifically, Defendant argues that pursuant to the terms of the Settlement Agreement between Plaintiff and Midland Funding, and upon receipt of payment, Midland Funding was released from all matters regarding the Beneficial Account that provided for the "dispute" at issue in the State Court Action. *Id.* "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted, essentially making the futility analysis the same as a Rule 12(b)(6) motion. *Holst v. Oxman*, 290 Fed.Appx. 508, 510 (3d Cir.2008). The trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss. *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir.1983). Given the liberal standard for the amendment of pleadings, however, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Aruanno v. New Jersey*, No. Civ.A.06–296, 2009 WL 114556, at 2 (D.N.J. Jan. 15, 2009).

The Court agrees that the release language within the Settlement Agreement renders the Amended Complaint as futile as to Midland Funding. "State law governs the construction and enforcement of settlement agreements in federal court." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.,* 975 F.Supp. 342, 348–49 (D.N.J.1996). Therefore, the interpretation and enforcement of the Settlement Agreement, and accompanying release, shall be governed by New Jersey law.

The enforceability of settlement agreements is governed by contract law. *Met Life Ins. Co. v. Hayes–Green,* 2008 WL 2119976, at *1 (D.N.J. May 20, 2008); *Excelsior,* 975 F.Supp. at 349. New Jersey law provides that "where the terms of a contract are clear or unambiguous there is no room for interpretation or construction and courts must enforce those terms as written." *Impink ex. rel. Baldi v. Reynes,* 396 N.J.Super. 553, 560, 935 A.2d 808 (App.Div.2007). A signed release, even a broad general release, is given considerable weight. *Cooper v. Borough of Wenonah,* 977 F.Supp. 305, 310, 311 (D.N.J.1997). "It is the general rule that where a party affixes his signature to a written instrument, *such as a release,* a conclusive presumption arises that he read, understood, and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in the signing." *Id.* at 311–12.

Further, New Jersey's law reflects its strong public policy in favor of enforcing settlements, which is "based upon the notion that the parties to the dispute are in the best position to determine how to resolve a contested matter in a way that is least disadvantageous to everyone." *Brundage v. Estate of Carambio,* 195 N.J. 575, 601, 951 A.2d 947 (N.J.2008). "In furtherance of this policy, our courts strain to give effect to the terms of a settlement wherever possible," and "settlements will usually be honored absent compelling circumstances." *Id.; see also Baron v. Jersey City Incinerator Authority,* 2009 WL 4798577, *4 (D.N.J. Dec.7, 2009) ("In general, settlement agreements will be honored absent a demonstration of fraud or other compelling circumstances," and "clear and convincing proof" is required to vacate settlements.).

Furthermore, although Defendant fails to point to New Jersey's Entire Controversy Doctrine (the "Entire Controversy Doctrine") in its opposition to the Motion to Amend, the Court finds that under the Entire Controversy Doctrine, the release clause within the Settlement Agreement should be enforced and bar the joining of Midland Funding to this action. New

Jersey Civil Practice Rule 4:30A (1997) provides, in part: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." The Entire Controversy Doctrine embodies the notion that "the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *DiTrolio v. Antiles,* 142 N.J. 253, 662 A.2d 494, 502 (1995) (quoting *Cogdell v. Hospital Ctr.,* 116 N.J. 7, 560 A.2d 1169, 1172 (1989)) (internal quotations omitted).

Thus, a party is required to bring in one action "all affirmative claims that [it] might have against another party, including counterclaims and cross-claims," and to join in that action "all parties with a material interest in the controversy," or be forever barred from bringing a subsequent action involving the same underlying facts. *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 662 A.2d 509, 513 (1995). A federal court hearing a federal cause of action is bound by the Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994). *Peduto v. City of North Wildwood,* 878 F.2d 725, 728 (3d Cir.1989). That Act provides in part that the "judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738.

In other words, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Id.* at 728 (quoting *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986)). If Plaintiff wanted to sue Midland Funding, he should have done so as a counter-claim in the State Court

Action. Plaintiff cannot join Midland Funding as a party to this action now. The law of settlement and release, together with the application of the Entire Controversy Doctrine, bars this federal action as to Midland Funding because the claims could have been brought in the first-filed State Court Action.

### B. Midland Credit and Encore

Defendant argues that Plaintiff's Proposed Amended Complaint lacks clarity with regard to Encore and Midland Credit as additional defendants in this action. (Def.'s Br. 6, ECF No. 12). The Court disagrees with this contention. In the Complaint, Plaintiff asserted claims arising under the FDCPA which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices. *Compl.* at 1. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Specifically, the FDCPA prohibits the use of any false, deceptive, or misleading representations or means,[4] and any unfair or unconscionable means[5], to collect or attempt to collect any debt. The FDCPA creates a private cause of action against debt collectors who violate its provisions. *Brown v. Card Service Center,* 464 F.3d 450, 453 (3d Cir.2006).[6] Plaintiff now seeks to amend the Complaint in order to more thoroughly reflect the facts that allegedly took place between Plaintiff and Defendant as they relate to the subject of this action. *Compl.* at 6. Specifically, Plaintiff seeks to amend the Complaint to add Encore and Midland Credit as Defendants in this action. *Am. Compl.* ¶¶5-7. The earlier State Court Action did not include Encore or Midland

---

[4] *See* 15 U.S.C. §1692e
[5] *See* 15 U.S.C. §1692f
[6] *See* 15 U.S.C. §1692k

Credit. Therefore, any mutual release provision within the Settlement Agreement is irrelevant to this Motion to Amend with regard to Encore and Midland Credit.

As noted, in order to survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, the Court must construe the complaint in the light most favorable to the plaintiffs and accept plaintiffs' well-pleaded allegations as true. *Nat'l Surety Corp. v. Hartford Cas. Ins. Co.,* 493 F.3d 752, 754 (6th Cir.2007). Though this Court expresses no opinion as to whether the language of either the First or Second Collection Letter sent to Plaintiff constitutes a "threat" under § 1692e(5),[7] the facts as alleged in Plaintiff's Complaint, if proven, *could* render one or both of the letters as "deceptive" or "misleading" communication, in violation of § 1692e. In determining whether a communication from a debt collector violates the FDCPA, a court must analyze the debt collector's statements from the perspective of the "least sophisticated debtor," in order to protect "all consumers, the gullible as well as the shrewd." *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir.2008). Although the "least sophisticated consumer" standard is a low standard, it nonetheless "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 221 (quoting *Wilson v. Quadramed Corp.,* 225 F.3d 350, 355 (3d Cir.2000)) (internal quotations omitted.

Upon reading both Collection Letters sent to Plaintiff, the least sophisticated debtor might get the impression that litigation or further litigation would be imminent if he or she did not respond. Such a reading would not be "bizarre or idiosyncratic," *Id.* Further, a debt

---

[7] Plaintiff's first cause of action under the FDCPA specifically alleges a violation of 15 U.S.C. §1692e(5). (*see* Compl. ¶ 48 at b.).

collection letter is deceptive where "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Wilson, 225 F.3d at 354. Plaintiff specifically alleges that the reading of the Second Collection Letter is "deceptive" as defined in the FDCPA. (Am. Compl. ¶ 51-52). Thus, the Court concludes that further proceedings are warranted to determine if such a reading is reasonable in light of the facts of this case.

### C. Applicability of the *Rooker-Feldman* Doctrine

Lastly, it is necessary to address Defendant's contention that the *Rooker–Feldman* doctrine precludes the exercise of subject matter jurisdiction over this action thus renders the Proposed Amended Complaint futile. *Def. Br. Opp.* at 5. Specifically, Defendant asserts that the Settlement Agreement, which was signed in the Superior Court of New Jersey, invokes *Rooker-Feldman*.[8] *Id.* However, this Court finds *Rooker-Feldman* to be inapplicable to the present Motion to Amend.

In certain circumstances, where a federal suit follows a state suit, the *Rooker–Feldman* doctrine prohibits the district court from exercising jurisdiction. There are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010). In this case, the four requirements of *Rooker-Feldman* are not properly satisfied. Even if this Court were to construe the Settlement Agreement as Plaintiff "losing" in state court,[9] the second requirement necessary to invoke *Rooker-Feldman* remains clearly unmet.

---

[8] Defendant argues that the "spirit" of Rooker-Feldman should apply. (Def.'s Br. 7, ECF No. 12).
[9] See *supra*.

The Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* explained that *Rooker–Feldman* is not implicated "simply because a party attempts to litigate in federal court a matter previously litigated in state court." 544 U.S. 292, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005). If the matter was previously litigated, as long as the "federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir.1993)) (further citation omitted). Here, Plaintiff has not plead for relief based upon injuries caused by the State Court Action, which rendered him accountable to pay $1,200.00 to the Midland Funding. Rather, Plaintiff specifically pleads for relief under the FDCPA, alleging abusive, deceptive, and unfair collection practices. *Compl*. at 1. Accordingly, this Court finds that Plaintiff's proposed allegations, if true, make out a plausible claim for violation of the FDCPA by Defendants Encore and Midland Credit, and as such, this Court has proper jurisdiction.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for leave to file an amended complaint is hereby GRANTED IN PART and DENIED IN PART. An appropriate Order follows.

Dated: November 19, 2013

                                        s/James B. Clark, III
                                        **HONORABLE JAMES B. CLARK, III**
                                        **UNITED STATES MAGISTRATE JUDGE**