UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------
ALLEN PHELPS,

       Plaintiff,

   vs.

PRESSLER & PRESSLER, LLP,
ENCORE CAPITAL GROUP, INC.,
& MIDLAND CREDIT MANAGEMENT, INC.,

       Defendants.
-------------------------------------------------------------------

Civil Action No.:

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

   Plaintiff ALLEN PHELPS ("Plaintiff"), by and through his attorneys, LAW OFFICES OF ALLISON POLESKY, P.C., as and for his Amended Complaint against the Defendants PRESSLER & PRESSLER, LLP, ENCORE CAPITAL GROUP, INC., & MIDLAND CREDIT MANAGEMENT, INC. (collectively herein, "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## INTRODUCTION

   1.  Plaintiff brings this action on his own behalf for damages and declaratory and injunctive relief arising from the Defendants' violation(s) of §1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA"). The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## PARTIES

   2.  Plaintiff is a resident of the State of New Jersey residing at 1 Tavern Lane, Whitehouse Station, NJ 08889.

3. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. 1692a(3).

4. Defendant PRESSLER & PRESSLER, LLP ("PRESSLER") is a New Jersey business entity engaged in business of collecting debts with its principal place of business located at 7 Entin Road, Parsippany, NJ 07054-5020. Additionally, PRESSLER has a place of business located in the State of New York located at 305 Broadway, 9th Fl, New York, NY 10007.

5. Defendant ENCORE CAPITAL GROUP, INC. ("ENCORE") is a California business entity engaged in business of collecting debts with its principal place of business located at 8875 Aero Drive, San Diego, CA 92123.

6. Defendant MIDLAND CREDIT MANAGEMENT, INC. ("MCM") is a California business entity engaged in business of collecting debts with its principal place of business located at 8875 Aero Drive, San Diego, CA 92123.

7. MCM is owned and controlled by ENCORE.

8. Defendants are "debt collectors" as the phrase is defined and used in the FDCPA under 15 U.S.C. §1692a(6).

9. Defendants PRESSLER, ENCORE, and MCM act jointly and in concert to collect consumer debts incurred primarily for personal, family, or household purposes.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as well as 15 U.S.C. §1692 *et seq.* and 28 U.S.C. §2201.

11. The Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. §1367(a).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

13. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "12" herein with the same force and effect as if the same were set forth at length herein.

14. Encore purchases portfolios of defaulted consumer debt and manages their collection through its subsidiary entities.

15. MCM and Midland Funding, LLC ("MIDLAND FUNDING") are such subsidiary entities of ENCORE.

16. Title to the purchased portfolios is taken and held by Encore's indirect subsidiaries such as MIDLAND FUNDING or another ENCORE subsidiary such as MCM.

17. MIDLAND FUNDING is referred to as a debt-owning company within the ENCORE family of business.

18. On information and belief, pursuant to a Servicing Agreement by and among ENCORE, MIDLAND FUNDING, and MCM, MCM is responsible for managing and servicing the collection of the debts owned by ENCORE's debt-owning entities such as MIDLAND FUNDING.

19. MCM is referred to as a servicer within the ENCORE family of businesses.

20. The Servicing Agreement grants MCM power and authority to conduct and manage the collection of the accounts to which MIDLAND FUNDING holds title, including, without limitation, the commencement of legal proceedings in MIDLAND FUNDING's name.

21. On information and belief, pursuant to certain written Collection Agreements between MCM and various law firms, ENCORE outsources debts to said law firms.

22. Pursuant to such Collection Agreements, ENCORE places accounts with the law firms, such as PRESSLER, from time to time for collection.

23. The Collection Agreements control the manner in which the law firms must conduct collection activities on behalf of MCM in connection with the accounts owned by MIDLAND FUNDING.

24. Specifically, the Collection Agreements require the law firms to abide by, and conduct all of their activities in a manner consistent with the then current "Procedures", which the Collection Agreement defines as "the Midland Account Handling Procedures".

25. The Collection Agreements contain bilateral indemnification provisions that allocate financial liability arising out respective collection efforts by and between the law firms and ENCORE.

26. The Collection Agreements provide for MCM's exercise of material control over each aspect of the law firms collection efforts.

27. The Collection Agreements contain daily reporting requirements pursuant to which the law firms make daily reports consisting of all information regarding any activity that occurs during that day on any account received by the law firm from MCM, including but not limited to, communications or attempted communications between the law firms and consumers.

28. The law firms must maintain or acquire technology and resources sufficient to communicate and transmit and receive data with MCM in connection with the debts placed with the law firm.

29. The Collection Agreements require the law firms to maintain true, complete and accurate records, instruments, agreements, correspondence and other documentation received or generated for a set period of years.

30. ENCORE manages and exercises control over each aspect of the collection process including outsourcing to law firms.

31. ENCORE and/or MCM monitor and control the day-to-day operations of the law firms collecting MIDLAND FUNDING's accounts on behalf of MCM pursuant to the Collection Agreements

32. PRESSLER is a law firm that has represented and continues to represent MIDLAND FUNDING and MCM.

33. On information and belief, MIDLAND FUNDING and/or MCM placed Plaintiff's account with PRESSLER pursuant to a Collection Agreement between MIDLAND FUNDING and/or MCM.

34. On information and belief, on a date better known to the Defendants, BENEFICIAL and/or MIDLAND FUNDING, either directly or through intermediate transactions assigned, placed, transferred, or sold the debt to PRESSLER for collection ("the alleged debt").

35. The alleged debt is a "debt" as defined by 15 U.S.C. §1692a(5).

36. On information and belief, at some time during the past one year prior to the filing of this action, Defendants began its attempts at collecting the alleged debt from Plaintiff.

37. The alleged debt that Defendants attempted to collect from Plaintiff arose out of transactions that were incurred primarily for personal, family or household purposes.

38. On or about April 12, 2012, Defendants caused a collection or "dunning" letter to be sent to Plaintiff via U.S. mail ("first letter"), a copy of which is herein attached as **EXHIBIT A**.

39. The first letter contains a § 1692g 30-day validation and dispute notice.

40. The first letter provides Plaintiff thirty (30) days from the receipt of the first letter to dispute and/or request validation of the alleged debt.

41. Defendants demand payment in the amount of $4,593.69 in the first letter.

42. On or about April 20, 2012, Plaintiff caused a letter to be sent to both PRESSLER and MIDLAND FUNDING wherein Plaintiff exercised his rights under § 1692g, disputed the validity of the alleged debt and asked that Defendants provide Plaintiff with proof of the alleged debt pursuant to § 1692g.

43. Defendants failed and/or refused to respond to Plaintiff's April 20, 2012 letter.

44. On or about May 20, 2012, Plaintiff caused another letter to be sent to both PRESSLER and MIDLAND FUNDING wherein Plaintiff again exercised his rights under § 1692g, disputed the validity of the alleged debt and asked that Defendants provide Plaintiff with proof of the alleged debt pursuant to § 1692g.

45. Defendants again failed and/or refused to respond to Plaintiff's May 20, 2012 letter.

46. On or about May 21, 2012, Defendants filed a lawsuit against Plaintiff in the Superior Court of New Jersey Hunterdon Special Civil Part titled Midland Funding, LLC v. Allen Phelps, Docket No. DC-000821-12 ("state action").

47. On or about May 31, 2012, Defendants caused another collection or "dunning" letter to be sent to Plaintiff via U.S. mail ("second letter"), a copy of which is herein attached as **EXHIBIT B**.

48. The second letter is a demand for payment.

49. The second letter states in relevant part, "As you probably know, this office has filed a lawsuit against you in which the amount claimed is $4,862.55. This includes costs and other amounts the creditor is seeking".

50. Said statement by Defendants is deceptive, misleading and confusing.

51. On or about June 8, 2012, Plaintiff filed an "Answer" in the state action.

52. Plaintiff disputed the amount of the alleged debt.

53. Plaintiff further disputed the validity of the alleged debt in its entirety.

54. Plaintiff's "Answer" stated that Defendants have failed to respond to Plaintiff's § 1692g requests.

55. On or about June 14, 2012, Defendants caused discovery requests, including "Interrogatories" and "Request for Admissions" to be served on Plaintiff in the state action.

56. Defendants' discovery demands force Plaintiff to admit and/or deny matters that have already been disputed by Plaintiff.

57. Defendants' discovery demands forces Plaintiff to admit and/or deny matters that have not yet been responded to or provided by Defendant through the §1692g mechanism.

58. Defendants' "Request for Admissions" forces Plaintiff to admit and/or deny that "The sum of $4,695.94 due and owing on BENEFICIAL Account Number 9517060057XXXX in this complaint is accurate" when in fact such an assertion has been previously disputed on more than one occasion by Plaintiff.

59. Defendants' "Interrogatories" asks Plaintiff to admit that the amount of $4,695.94 is owed by him when in fact such an assertion has been previously disputed on more than one occasion by Plaintiff.

60. Defendants must cease collection activity on the alleged debt on the date that Defendant receives Plaintiff's request pursuant to § 1692g.

61. Defendants must cease collection activity on the alleged debt on the date that Defendants receive Plaintiff's request pursuant to § 1692g and Defendants will be held liable if Defendants continues to collect the alleged debt until Defendants provide appropriate validation and verification.

62. Defendants must not resume and/or continue collection activities, including but not limited to taking affirmative steps in a debt collection lawsuit, until Defendants mail validation and verification to Plaintiff.

63. Defendants must not overshadow and/or "trump" the 30 day dispute and debt verification and validation period.

64. Defendants failed to respond to Plaintiff's § 1692g request prior to continuing and/or resuming collection activities.

65. Defendants failed to respond to Plaintiff's § 1692g request prior to taking affirmative steps in the state action.

66. Despite failing to respond to Plaintiff's timely § 1692g request, Defendants continued its collection activities toward Plaintiff, including but not limited to taking affirmative steps in the state action.

67. Plaintiff served discovery demands on Defendants.

68. Plaintiff demanded that Defendants to provide proof that the alleged debt was valid and that the original creditor was BENEFICIAL.

69. Defendants provided a copy of the "Assignment and Bill of Sale".

70. The "Assignment and Bill of Sale" makes no reference to the alleged debt.

71. The "Assignment and Bill of Sale" states that "HSBC Consumer Lending (USA) Inc." has sold "accounts" to MIDLAND FUNDING.

72. The original creditor was Beneficial Virginia, Inc.

73. The "Assignment and Bill of Sale" does not prove that the original creditor is BENEFICIAL.

74. Plaintiff demanded that MIDLAND FUNDING provide proof of purchase and ownership of the alleged debt.

75. Plaintiff demanded that MIDLAND FUNDING provide proof of purchase and ownership of the alleged debt, including but not limited to, a chain of title from Beneficial Virginia, Inc. to MIDLAND FUNDING.

76. The "Assignment and Bill of Sale", "Closing Statement", and "Account Schedule" make no reference to the alleged debt or Beneficial Virginia, Inc.

77. Defendant MIDLAND FUNDING and its Authorized Representative Alex Zaytsev signed "Verification as to Responses" and submitted same to Defendant PRESSLER for presentment to Plaintiff and the Court.

78. MIDLAND FUNDING and its Authorized Representative Alex Zaytsev signed "Verification as to Responses" on responses not based on personal knowledge and on responses where there was a lack of personal knowledge that responses were true and correct.

79. Defendants provided a copy of "Truth in Lending Disclosures" which Defendants purport is the contract between Plaintiff and BENEFICIAL.

80. The "Truth in Lending Disclosures" is silent on assignment of the contract, debt or both.

81. The "Truth in Lending Disclosures" state only that if Plaintiff fails to pay that the principal will become due at once and that "we", as in Beneficial Virginia, Inc., may sue you for the total amount you owe.

82. The "Truth in Lending Disclosures" does not expressly reserve the right to assign, sell or otherwise dispose of the alleged debt to any third parties.

83. "Beneficial" is not the original creditor but rather, on information and belief, is a broad name for several separate and distinct legal entities such as, but not limited to, "Beneficial Virginia, Inc.", "Beneficial Discount Co. of Virginia", "Beneficial Financial, Inc.", "Beneficial Mortgage Co. of Virginia", and "Beneficial Company LLC".

84. Plaintiff was unable to obtain from either Defendant a payment history from reflecting how they came up with the amount demanded as allegedly owed.

85. Neither Defendant could produce proof and/or evidence indicating how MIDLAND FUNDING acquired the alleged debt from Beneficial Virginia, Inc.

86. On or about September 4, 2012, despite the preceding issues with the alleged debt, Plaintiff appeared for the scheduled trial with Defendants.

87. Despite the preceding issues with the alleged debt, on information and belief, settlement and/or paying the debt without proving the merits of its claims at trial was the objective of Defendants.

88. Despite feeling as though he was "being shaken down", Plaintiff eventually paid a settlement to Defendants due to fear over the risks of litigation and the thought of possibly having a judgment entered against him.

89. As of this date, on information and belief, Defendant MCM continues to report the alleged debt on Plaintiff's credit reports and refuses to remove its report.

90. Due to Defendants' actions and inactions the Plaintiff is entitled to damages in accordance with the FDCPA.

### FIRST CAUSE OF ACTION
### FAIR DEBT COLLECTION PRACTICES ACT

91. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "90" herein with the same force and effect as if the same were set forth at length herein.

92. Defendants' debt collection attempts attempted and/or directed towards the Plaintiff violate various provisions of the FDCPA, including but not limited to the following:

   a. 15 U.S.C. §1692d-preface.

   b. 15 U.S.C. §1692e-preface, (2), (5), (8), and (10).

   c. 15 U.S.C. §1692f-preface and (1).

   d. 15 U.S.C. §1692g(a) and (b).

93. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to damages in accordance with the FDCPA.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ALLEN PHELPS demands judgment from the Defendants PRESSLER & PRESSLER, LLP, ENCORE CAPITAL GROUP, INC., & MIDLAND CREDIT MANAGEMENT, INC. as follows:

   A. For actual damages provided and pursuant to 15 U.S.C. §1692k;

   B. For statutory damages of $1,000.00 provided and pursuant to 15 U.S.C. §1692k;

   C. For attorneys' fees, costs, and disbursements;

   D. For an award of pre-judgment interest on all sums awarded and/or collected;

    E. For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff ALLEN PHELPS hereby respectfully requests a trial by jury for all claims and issues in his Complaint to which he is or may be entitled to at a jury trial.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I hereby certify to my own knowledge and based upon information available to me at my office and pursuant to Local Civil Rule 11.2 that this matter in controversy is not subject to any other action pending in any court, arbitration or administrative proceeding.

Dated:  November 19, 2013

        Respectfully submitted,

        By: __Eric M. Milner_____
        Eric M. Milner, Esq., Of Counsel
        LAW OFFICES OF ALLISON POLESKY, P.C.
        1 S. Franklin St., Suite 2
        Nyack, New York 10960
        Phone: 914-610-3207
        Facsimile: 914-610-3770
        Email: emilner@simonmilner.com
        Attorney for the Plaintiff Allen Phelps